HENRY C. SIFFORD, Admr., Appellee, vs. MATTIE CUTLER, Appellant.

*Opinion filed February 25, 1911.*

1. RES JUDICATA—*when judgment of reversal is not conclusive of all questions.* A judgment of the Supreme Court reversing a decree upon the ground an administrator has no power, in a proceeding to sell land for the payment of debts, to set aside a deed of the intestate made in fraud of creditors, is not conclusive of the questions of the grantor's mental capacity or whether the deed was procured by undue influence or was ever delivered, where there was no adjudication of such questions in the former decree and no certificate of evidence, the deed being set aside by the decree upon the sole ground that it was in fraud of creditors.

2. APPEALS AND ERRORS—*when rule that chancellor's findings of fact will not be lightly disturbed applies to county court.* The rule that where the chancellor saw the witnesses and heard them testify his findings of fact from conflicting testimony will not be disturbed by the Supreme Court unless the error in the findings of fact is clear and palpable, applies to findings of fact by the county court where it exercises jurisdiction of an equitable nature, as in setting aside, in a proceeding by an administrator to sell lands to pay debts, a deed which the court finds was made by the intestate while of unsound mind.

3. SAME—*when Supreme Court cannot sustain a decree on the facts.* The Supreme Court cannot sustain a decree upon the facts where the case made by the witnesses for the successful party is weak and unsatisfactory and is contradicted by a large number of witnesses who were in a position to know the truth of the matters about which they testified, and whose testimony is much clearer and more conclusive than that of the successful party's witnesses.

4. DEEDS—*when decree setting aside deed cannot be sustained.* A decree of the county court setting aside a deed and directing a sale of the land to pay debts of the deceased grantor, upon the ground the grantor was of unsound mind and unduly influenced by the grantee, cannot be sustained, where the clear preponderance of the evidence shows that there was no undue influence but that the deed was made in pursuance of a long-existing and expressed intention of grantor, who, though old and weak and at the point of death, understood what she was doing when she executed the deed.

APPEAL from the County Court of Union county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

RICHARD PEERY, and P. E. HILEMAN, for appellant.

JAMES LINGLE, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee, as administrator *de bonis non* of the estate of Malinda Craver, deceased, filed a petition in the county court of Union county for the sale of lands to pay debts. The petition was originally filed to the June term, 1908, of the county court of said Union county, and alleged liabilities on the part of the estate, on account of claims allowed and to be allowed and costs of administration, of $5361.26, and that after disbursing the proceeds of the personal estate there would be a deficit of $4954.05. The petition alleged Malinda Craver died seized in fee of 505.82 acres of land in section 16, township 13, south, range 2, west of the third principal meridian, Union county, Illinois; also lot 141 in Grammer's addition to the city of Jonesboro, Illinois; the undivided one-half interest in 112 acres of land in section 30, township 12, south, range 1, west of the third principal meridian, and the undivided one-half of lots 142, 143, 144, 145, 146 and 147 in Grammer's addition to the city of Jonesboro, Illinois; that said Malinda Craver died intestate October 3, 1907, but that on October 1, 1907, she made a pretended deed of her undivided one-half of the 112 acres of land and lots in Jonesboro to appellant, Mattie Cutler. The petition further alleged that the land so conveyed to appellant was worth $6000, and that the residue of the lands of deceased was not sufficient to pay the debts and liabilities of the estate and costs of administration; that the pretended conveyance to appellant was a cloud upon the title of deceased, and should be removed for the reason that the said deceased, at the time of the alleged making thereof, and before said time, was in her dotage, being of the age of eighty years, and was greatly weakened and emaciated in body and in a senile condition, and her mind

and memory were so weakened and impaired that she was wholly incapacitated and unable to make said deed, and that said deceased died two days after the time of the making of said alleged deed, of senility. The petition also alleged the deed was procured by the appellant by undue influence. Appellant answered the petition, denying that the deed was invalid or a cloud upon the title of deceased; denying that deceased was mentally incapable of making the deed or that it was procured by undue influence, and averring that deceased was of sound mind and memory and mentally capable of making the deed and understanding the nature and effect of it. The answer alleged that prior to the filing of the petition appellant and Alice Craver, the owner of the other undivided one-half of the 112 acres and the lots in Jonesboro, made a parol partition between themselves and exchanged deeds for their respective parcels, and that the appellant had executed a mortgage to J. W. Roy upon her portion of the premises, except the lots mentioned, to secure a note for $600, which note was unpaid. A trial was had before the county court and a decree entered setting aside the deed as in fraud of creditors. The case was brought to this court for review by writ of error. There was no certificate of evidence, and as it appeared from the decree that the ground upon which the deed was set aside was that the conveyance was void because made in fraud of creditors, said decree was reversed on the ground that the administrator could not maintain an action to set aside a conveyance made by his intestate in fraud of creditors. (*Sifford v. Cutler,* 244 Ill. 234.) Upon the filing of the remanding order in the county court we understand from the statement of counsel in their briefs, although this is not made to appear in the record or the abstract, that appellee amended the petition by the insertion of an allegation that the deed was never delivered to the grantee by the grantor. Appellant also filed an amendment to her answer, in which she averred that Malinda Craver and her brother, James

Craver, took appellant into their family when she was a
small child; that she lived with them from the time she
was nine years old until she attained her majority, during
which time she worked in the fields, gardens, about the
house and in milking cows, for which she received nothing
except her board and clothes; that said James and Malinda
Craver led her to believe they would leave her their prop-
erty upon their deaths; that they were old, sick and infirm;
that before his death James Craver, who died some years
before Malinda Craver, owned the lands conveyed to appel-
lant but prior to his death conveyed them to Malinda Craver,
subject to whatever equities appellant had in them. The
amendment further alleged that it was agreed between ap-
pellant and Malinda Craver that as a part of the consider-
ation for the deed the appellant was to furnish a home for
Annie Hileman, a sister of Malinda Craver, during the life
of said Annie Hileman, and that this agreement, which was
incorporated in the deed, has been kept and performed by
appellant. The amendment further alleged that the judg-
ment of this court reversing the decree and remanding the
case was a final judgment and that the county court had no
jurisdiction to again try the issues made under the petition.
After a trial before the court a decree was entered finding
the liabilities of the estate exceeded the amount received
from personal property $7443; that the conveyance from
the deceased to appellant was obtained by undue influence,
and "that said Malinda Craver was not mentally capable of
making said deed; that there was no delivery of the same;
that the same was not the deed of the grantor; that said
deed was and is a cloud upon the title of said deceased."
The decree further found that appellant and Alice Craver
had made a parol partition of the premises between them-
selves and each had taken possession of her parcel, and this
partition was confirmed by the decree of the court. The
decree ordered and adjudged that the deed made by Ma-
linda Craver, deceased, to appellant be set aside as a cloud

upon the title of deceased, and the deed from Alice Craver
to appellant, pursuant to the parol partition, be set aside. It
was further ordered that all of the real estate owned by
Malinda Craver at the time of her death, or so much thereof
as may be necessary, including that portion of the 112 acres
and the lots in Jonesboro allotted to appellant in the parol
partition between her and Alice Craver, be sold for the pay-
ment of the debts of said Malinda Craver, deceased. The
$1000 mortgage on the lands in section 16 and the $600
mortgage to Roy on the 112 acres were ordered paid out
of the proceeds of the sale and the lands were decreed to be
sold free and clear of those encumbrances. From that de-
cree Mattie Cutler has appealed to this court.

The former judgment of this court was not a final judg-
ment of the cause and binding upon the county court except
in so far as it was decided that the court could not, at the
suit of the administrator, decree that the deed be set aside
as a fraud upon creditors. There was no adjudication in
the former decree of the county court upon the mental ca-
pacity of Malinda Craver to make a deed or whether the
deed was delivered or whether it was procured by the undue
influence of the grantee, and the judgment of this court did
not conclude the appellant from trying those questions after
the reversal of the decree and the remanding of the case.
(*Dinsmoor* v. *Rowse,* 211 Ill. 317; *Prentice* v. *Crane,* 240
id. 250.) We are therefore required to determine whether
the evidence was sufficient to sustain the findings and de-
cree of the county court that the deed from Malinda Craver
to appellant was obtained by undue influence; that Malinda
Craver, at the time she executed it, was not mentally capable
of making the deed, and that there was no delivery of said
deed to the grantee.

On the question of mental capacity and the circum-
stances of the execution of the deed four witnesses testified
for appellee. Minerva Boyd, a niece of Malinda Craver,
testified she had known deceased all her life; that she went

to the house of deceased the day before she died, which was the day after the deed was executed; that the deceased was unconscious and did not regain consciousness before her death. The witness testified that Malinda Craver had been an invalid and unable to do any work for a number of years. The witness had not seen Malinda Craver for about a month prior to her visit the day preceding the death of Malinda Craver, and expressed no opinion as to her mental condition prior to the date of her last visit to her. Will L. Lingle, a notary public, testified he had known Malinda Craver all his life and had transacted business for her; that he was sent for just before noon, October 1, to go to the house of Malinda Craver; that he there saw appellant and Frank Row; that he had no conversation with deceased, but his impression was that appellant told him he had been sent for to prepare and take the acknowledgment of the deed; that she gave him an old deed containing the descriptions, and he went to his office, prepared the deed, filled out the acknowledgment and attached his seal to it; that when he returned with the deed prepared for Malinda Craver's signature, in addition to appellant and Frank Row, Annie Hileman and Belle Hurston were at the house; that Malinda Craver was in bed and appeared to be very sick; that her eyes were closed; that he had no conversation with her but says he was there fifteen or twenty minutes; that he didn't think the deed was read to Malinda Craver, but thought appellant said, "Aunt, here is the deed for you to sign," and that Malinda Craver made no response; that she was propped up in bed and put her hand to the pen to make her mark; that after this was done appellant gave witness money for recording the deed, and he took the deed and filed it in the recorder's office. The witness testified: "I had a little doubt about her mental condition and understanding what she was doing at the time; I heard her say nothing." The witness testified he had some years before taken her acknowledgments of some deeds, and she was

then in bed but he thought she knew what she was doing. The witness further testified that he thought, at the time he took the acknowledgment, Malinda Craver understood and knew what she was doing but had a little doubt about it; that from his knowledge of her, and considering her condition, his best judgment was that she knew what she was doing; that there was no persuasion or undue influence used, to his knowledge, and, so far as he saw or knew, she made the deed of her own free will and accord. Hattie Craver testified she and Kate Craver went to the house of Malinda Craver in the forenoon of the day the deed was executed and stayed there until about four o'clock in the afternoon; that Malinda Craver was very low; that she went to her bed and someone told her who the witness was, and she looked up and nodded her head but did not speak at any time when witness was in the room. The witness testified she was in the room at different times,—perhaps an hour altogether,—and thought Malinda Craver was in a dying condition; that she thought she was unconscious and did not know her; that witness was in the kitchen when the deed was made; that when she went to leave she went into the room to say good-by to Malinda Craver, but she looked so weak that witness did not disturb her. Kate Craver testified to being at the house October 1 and that Malinda Craver was very sick and seemed very weak, and witness thought she did not know her; that she did not hear her talk any and did not think she was in a condition to make a deed; that when she was spoken to by persons she would nod her head a little; that witness saw Lingle there, and she saw him have a paper but did not know what was done; that she could not remember how long it had been since she had seen Malinda Craver previous to October 1; that she was always in bed and talked low. This is the substance of all the testimony on behalf of appellee relating to the mental capacity of Malinda Craver and the circumstances under which the deed was executed.

On behalf of appellant, Annie Hileman, a sister of Malinda Craver, testified she was living at Malinda Craver's house when she died and had been living there about eight years; that she was there when the deed was made; that she heard Malinda Craver say, before that time, she wanted to make a deed to appellant because appellant had helped her when she needed help; that deceased talked about it the day the deed was made; that she said she wanted to have it done and sent for Lingle to come and attend to it; that witness was at the bedside when Lingle brought the deed and thought Malinda Craver knew what she was doing; that Lingle asked her if it was all right, and she said it was; that she (Malinda Craver) handed the deed to appellant and appellant gave it to Lingle. She testified she never knew appellant to persuade Malinda Craver to make the deed; that Malinda Craver said the witness was to have a home on the premises for her life if she wanted it, and appellant agreed to it, and witness has made her home with appellant ever since; that witness was seventy-eight years old, and her sister, Malinda Craver, was two or three years older than she. The witness testified her sister died about half-past two o'clock on the morning of October 3; that she became unconscious before she died but was not unconscious the day before and was not unconscious the day the deed was executed, but she didn't talk very much, as she was weak and feeble; that witness thought she recognized everyone and when asked questions she would answer; that witness didn't think the deed was read to her, but that Lingle asked her if she acknowledged it, and she said yes. Frank Row testified he had been working at Malinda Craver's and staying there about two months when she died; that he was present when Lingle came to the house with the deed; that he talked with Malinda Craver that day and she was in her right mind and knew what she was doing; that he didn't remember whether Lingle read the deed or stated what was in it, and when Malinda Craver took the pen to sign it she said

she felt so bad she could not, and made her mark. Witness testified her mind was sound the next day and she called for things she wanted; that he didn't hear appellant say or do anything to persuade Malinda Craver to make the deed and saw nothing to indicate she was not acting of her own free will; that before the deed was made witness heard Malinda Craver say she wanted to make a deed and fix up her business as she could not live very long; that he heard her call for things to eat on both October 1 and 2. Ellen Stevens testified she was at the Craver house the day the deed was made, and Malinda Craver said she had delivered the deed to Mattie and had gotten her business all straightened up; that she knew what she was doing and was capable of transacting business; that before the deed was made she had heard her say she was going to straighten things up with Mattie. Belle Hurston testified she was at the Craver house when the deed was acknowledged and thought Lingle explained it to her; that Malinda Craver talked on different subjects; that she asked witness for a drink of water and thanked her when she gave it to her; that the witness saw nothing wrong with her mind and thought her mind was all right. Agnes Ussery testified she was at the Craver house the day preceding Malinda Craver's death at night and saw nothing to indicate that she did not know what she was doing. Alice Craver, a niece of Malinda Craver, had lived with her aunt twenty-three years. She testified her aunt was an invalid for two years before her death; that she had told witness she was going to give appellant something but didn't say what it was; that witness knew some time before the deed was made that her aunt intended to fix up her business; that she saw Lingle come to the house and knew her aunt was doing some business but was not present when the deed was executed; that her aunt's mind was as good at that time as it ever was; that she waited on her and gave her medicine, talked with her and thought her mind was sound; that witness didn't know the deed had

been executed until she saw it published in the transfers of real' estate in the newspaper. Dr. Nusbaum, a practicing physician, testified he had treated Malinda Craver some years and saw her last on October 1 and 2; that her memory and understanding were then about the same as they had been several days previous; that she seemed to understand directions and talked rationally, and the witness thought she understood ordinary business. This is the substance of the appellant's testimony on the subject of mental capacity, undue influence and delivery of the deed.

· It clearly appears from the evidence in the case that the weight of it is contrary to the findings of the decree. Appellee insists that this is to be considered as a proceeding in chancery, and that a reviewing court will not disturb the findings of a chancellor who saw the witnesses and heard them testify, where the evidence is conflicting, unless the error in the findings of fact is clear and palpable. (*Village of Itasca* v. *Schroeder,* 182 Ill. 192.) We do not disagree with appellee as to the correctness of the rule insisted upon, but in our opinion the error in the findings of fact in the decree, under the testimony in this case, is clear and palpable. We do not regard the case made by appellee's testimony, if undisputed, as very clear and satisfactory. If his evidence had been clear and direct upon the questions in dispute, the mere fact that it was contradicted by a larger number of witnesses would not justify us in reversing the decree, but where, as here, the case made by the appellee is weak and unsatisfactory and is contradicted by a larger number of witnesses who were in a position to know the truth of the matters about which they testified and whose testimony is much clearer and more conclusive and direct than that of the witnesses for complainant, we cannot say that a decree in favor of the complainant should be sustained. This court is always reluctant to disturb a decree on findings of fact made by a chancellor who saw the witnesses and heard them testify, but it would fail of its duty

if it should sustain such findings under the state of the evidence in this record.

The decree is reversed and the cause remanded.

*Reversed and remanded.*