Philip Ober, Plaintiff, *v.* Metropolitan Life Insurance Company, Defendant.*

City Court of New York, Bronx County, March 26, 1935.

*Milton S. Marks*, for the plaintiff.

*Leonard M. Gardner*, for the defendant.

Donnelly, J. The action is brought to recover damages for the breach of the covenant of quiet enjoyment contained in a lease given to plaintiff by defendant of a basement in premises No. 920 Riverside drive, New York city, to be used and occupied by plaintiff for a valet shop. Under the terms of the lease plaintiff on October 15, 1932, entered into possession of the premises, paid the rent reserved thereunder to December 15, 1932, moved out on December 26, 1932, and paid no further rent. November 18, 1932, the tenement house department of the city of New York notified the owner and the tenant (plaintiff) in writing as follows: " Your attention is called to the fact that the premises known as Nos. 920–926 Riverside Drive, Manhattan * * * is occupied and maintained in violation of Article 2, Sections 2 and 3 of the Building Zone Resolutions in the following particulars: Item 5. The apart-

* Affd., App. Term, First Dept., without opinion, N. Y. L. J. Oct. 22, 1935, p. 1412.

ment at front west in the basement is being occupied as a cleaning and tailoring shop. Such use is prohibited in a residential district and you are hereby directed to discontinue such use and occupancy forthwith."

The day after plaintiff received this notice he called upon defendant's agent, Farnham, with whom he had had his negotiations for the lease. He then told Farnham that an inspector from the tenement house department had been to his place of business and insisted that some signs relating to plaintiff's business be removed from the window of his shop. Farnham promised plaintiff he would see what he could do about it. Accordingly, Farnham called up the tenement house department and was told that if the signs were removed from the window everything would be all right. Farnham told plaintiff about this conversation. Plaintiff consulted his attorney about the matter. His attorney advised him to move out because he was violating the Zoning Law.

On December 15, 1932, a postal card notice was sent by the tenement house department to plaintiff which reads as follows: "Borough of Manhattan. Premises Nos. 920–26 Riverside Drive. You are hereby informed that the following violations of the Multiple Dwelling Law, previously reported against the above premises, have been dismissed and removed from the records of this department. Item No. 5 cancelled."

The tenement house department had no authority to remove the violation. What was probably meant by the department's notice was that it would not prosecute for the violation. The zoning resolutions and all amendments thereto are made by the board of standards and appeals. The tenement house department has no authority to zone or rezone. Its duty is to enforce the rules and regulations of the board of standards and appeals. (Amended Building Zone Resolution, § 23; Ash's Greater New York Charter, Ann. Cum. Supp. [1932] p. 279.)

The instant case, upon its facts, seems to come squarely within the rule announced in *Hartsin Construction Corp.* v. *Millhauser* (136 Misc. 646). In the case just cited an examination of the record on appeal discloses that there was a written lease of the corner store in the building No. 381 Park avenue, New York city. The lease provided that the demised premises were to be used and occupied only for men's furnishings and haberdashery. At the time of entering into the lease and at the time of trial, the zoning ordinances restricted the district of which the premises in question are a part to residential use solely. The lease further provided that the defendant should enter into possession, and that if any notice of violation should be served upon her, the landlord would prosecute

an appeal, and if unsuccessful, should have the right thereafter to declare when the lease should terminate. The tenant was served with an order of the tenement house depàrtment requiring her to discontinue the use of the leased premises as a men's furnishings and haberdashery store. Thereafter the tenant vacated the premises. The court held: " The premises being let solely for the carrying on of a business which was in violation of the zoning laws the lease was illegal. The provision under which the landlord, in the event of the issuance of an order against the existing use, undertook to make application to the board of standards and appeals for the modification of the zoning restrictions, the tenant agreeing to pay rent as long as she was permitted to remain in the premises, did not validate the instrument."

The lease being for prohibited purposes, no basis existed for the landlord's claim for rent or for tenant's claim to continued use and occupancy. The lease was void, hence unenforcible. (*O'Neill* v. *Derderian*, 138 Misc. 488.)

In *Municipal Metallic Bed Mfg. Corp.* v. *Dobbs* (253 N. Y. 313, 316) it was held: " A plaintiff cannot recover if he is compelled to predicate his cause of action on an illegal contract," citing *Hart* v. *City Theatres Co.* (215 N. Y. 322). In the *Hart* case the parties entered into an agreement by which certain specified repairs were to be made. These repairs if made would violate the Building Code. In holding that the performance of the contract required a violation of the Building Code, the court (at p. 330) said: " ' Courts will not be astute to sustain contracts when the effect will be to weaken the efficacy of laws and regulations designed for the protection of human life. Where a contract on its face, whether so intended by the parties or not, offends against statutes intended to promote public safety, the courts will not enforce it.' "

The same principle, as I gather from the decision in *Hartsin Construction Corp.* v. *Millhauser* (*supra*), applies to laws or regulations designed to promote the public comfort and convenience. Sections 242-a and 242-b of the Greater New York Charter (added by Laws of 1914, chap. 470, as amd. by Laws of 1916, chap. 497) vest in the board of estimate and apportionment of the city of New York the legislative power to regulate the height of buildings and to divide the city into use districts. The zoning laws were adopted by the board of estimate and apportionment for the " promotion of the public health, safety, comfort, convenience and general welfare." (Amended Building Zone Resolution, § 20; Ash's Greater New York Charter, Ann. Cum. Supp. [1932] p. 277.) This resolution was adopted pursuant to legislative authority contained in sections 242-a and 242-b of the Greater New York Charter. An occupation

.in violation of its terms is a misdemeanor on the part of both landlord and tenant. (Amended Building Zone Resolution, § 23; Ash's Greater New York Charter, Ann. Cum. Supp. [1932] p. 280.)

Complaint dismissed; counterclaim dismissed, with proper exceptions to each of the parties. Ten days' stay and thirty days to make and serve a case.