PIONEER TRUST AND SAVINGS BANK *et al.*, Plaintiffs-Appellants, *v.* ANGELO ZONTA *et al.*, Defendants-Appellees.

First District (4th Division)   No. 78-1297

Opinion filed July 12, 1979.

Eileen Colman and Mel Cahan, both of Chicago (Lurie and Cahan, Ltd., of counsel), for appellants.

Neville, Pappas and Mahoney, of Chicago (George Pappas, of counsel), for appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Pioneer Trust and Savings Bank (Pioneer Trust), individually, and as trustee of a land trust and Louis Seidman, the beneficial owner of that trust, brought suit in the circuit court of Cook County as lessors of property seeking to collect rent, attorney's fees and other damages they allege are owed to them by the defendants, Angelo Zonta and Mike Gentile. The individual interest of Pioneer Trust is not explained in the record. Following a trial without a jury, the court entered judgment for the amount of $1945 in favor of Pioneer Trust and Seidman. That amount includes compensation for damage to their property, some attorney's fees and reimbursement for a title insurance policy they purchased. The court denied their claims for rent and for any attorney's fees incurred in attempting to obtain the rent. Pioneer Trust and Seidman appeal this decision; there is no cross-appeal.

In January 1975, Zonta contacted Seidman about renting Seidman's one-story brick building and the adjacent unpaved lot. Zonta, a caterer since 1964, proposed to use the property for a catering business. Seidman, an upholsterer, told Zonta that he was negotiating to lease the building to another party but that he would consider renting it to Zonta under a long-term lease with a minimum monthly rent of $2600.

During January and February, Zonta and Seidman met and discussed such a lease on several occasions. Although Zonta told Seidman he intended to use the building as a catering hall, at no time did Zonta disclose the number of patrons he intended his building to serve. At trial, Zonta said that sort of information "had nothing to do with [Seidman]." At the negotiating sessions they decided that if Zonta leased the property and if remodeling were needed, Zonta, not Seidman, would do all the work required, although Seidman would have the right to see and approve the plans for it.

On April 21, 1975, Zonta and his guarantor, Gentile, signed the lease. The term was from April 1975 (no specific day given) until May 31, 1980, with rent of $2600 per month. A rider stated that the lessor agreed to "abate all rental due until June 1, 1975," unless remodeling were to begin earlier. Another clause provided that Zonta could remodel the building with the approval of Seidman and Pioneer Trust and that he could install a parking lot, the size of which was to be determined later by the parties. It was also represented that at the time Zonta took possession, the building would not be in violation of State, county or municipal building codes. Zonta agreed to pay any future tax increase and a security deposit which was due in May 1975. Finally, in the event of default on the lease, Zonta would be responsible for any reasonable attorney's fees which might be expended in enforcing the lease.

In January or February, 1975, prior to signing the lease, Zonta hired Victor Ramaciotti, an architect, to design the building as a banquet hall with the capacity to seat 400 people. This was the size Zonta thought necessary for the business to be a financial success. Ramaciotti told Zonta that for a facility that size the present zoning laws would require a parking lot almost double the area of the lot next to the building. That lot could only support a catering hall with a 260-person capacity. According to Zonta, such a facility is not economically sound. Zonta attempted to purchase another nearby lot but was unsuccessful. There was some evidence that, after the lease was signed but before the rent was due under it, Zonta showed Seidman the plans for the restaurant and told him about the zoning problem.

Zonta paid neither the security deposit nor rent. In September 1975, Pioneer Trust and Seidman filed this suit. Evidence showed Seidman immediately put the building on the rental market after learning that Zonta did not intend to use it, but that the building remained vacant until February 28, 1976. In addition, Pioneer Trust and Seidman sought reimbursement for the title insurance policy they had purchased, for repair work they contend was necessary because of the damage caused by Zonta, and attorney's fees.

On appeal, Pioneer Trust and Seidman contend that the lease gives them a clear right to these damages. The gist of the argument Zonta and Gentile present is that the zoning restriction limiting the size of the restaurant in proportion to the size of the parking lot frustrated the purpose of the bargain and made the lease of the building unenforceable. First, Zonta and Gentile suggest that the parties had agreed, as a condition precedent to the existence of the lease itself, that the catering business in the building have a capacity of 400 persons. The zoning restriction impeding this purpose, therefore, prevented the lease from becoming effective. Second, Zonta and Gentile argue that the basis of the bargain between the parties was the use of the building as a catering hall with a capacity of 400 persons. The zoning restriction then, is characterized as a mutual mistake of fact or at least a lack of mutuality which demands the rescission of the lease.

■■ We cannot accept either of those arguments. First, the defendants have waived the right to complain of the nonperformance of a condition precedent. The complaint made a general allegation that all conditions precedent to the contract were performed. The defendants answered it with a general denial. Under Supreme Court Rule 133 (Ill. Rev. Stat. 1975, ch. 110A, par. 133), in order to effectively raise an issue concerning a condition precedent, facts must be alleged to show the failure to perform it. Since Zonta and Gentile did not do this in their answer, the issue has not been properly raised.

Second, and more importantly, in this case the agreement between the parties was reduced to writing and under such circumstances the intentions of the parties must be ascertained from the instrument itself. (*Gardiakos v. Vanguard Communications, Inc.* (1976), 38 Ill. App. 3d 937, 350 N.E.2d 210.) Zonta and Gentile point to no explicit language in the contract which would state a condition precedent of the nature they describe. Nor do they demonstrate any ambiguity from which such a condition can be inferred. Finally, even if the ambiguity existed, the defendants have not produced any extrinsic evidence which would substantiate their claim. In light of such omissions, we cannot say that the parties intended to condition the lease on anything more than their signatures or the rent on anything more than the commencement of remodeling or the occurrence of June 1, 1975.

■■ The second argument, suggesting that the zoning restrictions caused a failure of the basis of the bargain between the parties, must also be rejected. While in some cases prohibitions of use because of zoning may make a lease void or at least abate a portion of the rent due under it (see Annot., 37 A.L.R.3d 1018 (1971)), none of the conditions which necessitate such a rule have been demonstrated here.

■■ Zonta and Gentile have not shown that the use of the building as a 400-person capacity business was the basis of the bargain between them and the lessors. Generally, rescission of a lease depends upon facts which prove the lessor's knowledge of the lessee's intended use of a building and utilization of that knowledge as inducement for the execution of the lease. (See *Hoops v. Fitzgerald* (1903), 204 Ill. 325, 68 N.E. 430.) Although there is evidence that Zonta intended and planned the building to be used with a 400-person capacity and that Seidman saw those plans, there is no evidence that Seidman knew that Zonta required such a capacity before the business would succeed or that such information occasioned the lease. On the contrary, Zonta said that it was not Seidman's "business to know" how big the facility would be and that he never told him anything about it.

■■ Further, rescission is not usually granted unless some change in the law occurs after the lease has been signed which thwarts the intended use of the premises. (See *Warshawsky v. American Automotive Products Co.* (1956), 12 Ill. App. 2d 178, 188, 138 N.E.2d 816, 821.) The parties are presumed to know the law at the time the lease is made. (*Kazwell v. Reynolds* (1928), 250 Ill. App. 174.) Here, there was no change in the law subsequent to the signing of the lease: the availability of parking would restrict the capacity of the catering hall to less than 400 before the lease was signed as well as after it and Zonta had ample opportunity to investigate the situation prior to the signing of the lease.

■■ In addition, the zoning ordinances here do not prohibit the conduct

of a catering business on the premises but merely circumscribe the size of that business. As held in *Deibler v. Bernard Bros.* (1944), 385 Ill. 610, 614, 53 N.E.2d 450, 452, as long as the purpose of the lease may be achieved to some extent "[t]he fact that * * * [governmental action] has rendered * * * [a] business less profitable and * * * ability to pay * * * rentals more burdensome, does not relieve [a lessee] from the obligations of the lease." See also *Warshawsky*.

■■ Finally, the argument of Zonta and Gentile that the lease should be rescinded because of the zoning prohibition is made too late. Such a remedy was never requested at trial nor were any facts pleaded which would attest to the right to such relief. See Ill. Rev. Stat. 1975, ch. 110, par. 43(4); *Diedrich v. Northern Illinois Publishing Co.* (1976), 39 Ill. App. 3d 851, 350 N.E.2d 857; *Golem v. Fahey* (1961), 191 Cal. App. 2d 474, 13 Cal. Rptr. 63.

Based on the discussion above, we reverse that part of the order of the trial court which denied Pioneer Trust and Seidman adequate damages. Pioneer Trust and Seidman are entitled to the payment of rent owed to them under the lease and the expenses they incurred because of the breach of the lease. The expenses should include the cost for any property damage, the title insurance payment and reasonable attorney's fees. We note that a clause in the lease explicitly gives the lessor a right to attorney's fees and that no evidence at trial demonstrated that the clause should be vitiated or that the calculations presented were unreasonable.

We affirm that part of the trial court's order which granted damages to Pioneer Trust and Seidman and remand the cause for entry of an order not inconsistent with this opinion.

Affirmed in part.

Reversed in part and remanded.

JOHNSON and ROMITI, JJ., concur.