BRUNING SEEDING COMPANY, APPELLEE AND CROSS-APPELLANT, V. MCARDLE GRADING COMPANY, APPELLANT AND CROSS-APPELLEE.

439 N.W.2d 789

Filed May 19, 1989.    No. 87-972.

Malcolm D. Young and Jeff C. Miller, of Young & White, for appellant.

Thomas R. Wolff for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and McGINN, D.J.

WHITE, J.

This is an appeal and cross-appeal from the district court for Douglas County following a verdict for the plaintiff in a contract action. In a trial to the bench, the court returned a verdict for the plaintiff in the amount of $19,580.

There are many contested facts in this case; however, in an action at law, where a jury has been waived and evidence is in conflict, the Supreme Court, in reviewing the judgment, will presume that controverted facts were decided by the trial court in favor of the successful party, and those findings will not be disturbed on appeal unless clearly wrong. It is not within the province of the Supreme Court to resolve conflicts in or reweigh evidence. *Kracl v. Aetna Cas. & Surety Co.,* 220 Neb. 869, 374 N.W.2d 40 (1985). The following facts most favorable to the plaintiff-appellee, Bruning Seeding Company (Bruning), can be deduced from the evidence.

In May of 1983, the defendant-appellant, McArdle Grading Company (McArdle), was awarded the general contract for a Missouri River project by the Corps of Engineers. Under the terms of the contract McArdle was to build a levee on the Nebraska side of the Missouri River near Bellevue. In addition to building and grading the levee, McArdle was to construct the drainage structures and seed and mulch the levee slopes,

borrow pits, berm areas, and wildlife habitat area. After McArdle was awarded the levee contract, Bruning was awarded and signed, on June 1, 1983, a subcontract for the seeding of the levee slopes, borrow pits, and wildlife habitat, and for the planting of trees in the wildlife habitat for the Missouri River project.

Robert Bruning and Paul McCune operate separate seeding businesses involved in different types of seeding. Robert Bruning operates a business designated Bruning Seeding Company. Robert Bruning and McCune jointly operate a company known as Commercial Seeding Contractors. The latter company performs work requiring the blowing of straw mulch over seed once the seed is placed, and has developed a unique mulch machine for that purpose. McArdle knew that the mulching operation of the Missouri River seeding project was to be performed by Commercial Seeding. Robert Bruning was a 50-percent owner of Commercial Seeding and, as Bruning did not own a mulcher, when Bruning obtained contracts, Commercial Seeding's mulcher was used on the projects where mulching was necessary.

Little work was completed on the Missouri River project in 1983. In 1984, the project was under 3 to 4 feet of water from a flood. McArdle believed that it would not be able to work the project in 1984 due to this flood and was able to secure other projects. No seeding was completed in 1984.

Representatives of Bruning and McArdle drove to the levee in the early part of May 1985. At that time the property was too wet for seeding, but McArdle said that it would be ready in approximately 10 days. A significant amount of rain fell in 1985 after the site inspection in early May.

In 1985, Commercial Seeding was involved in another project using the mulcher that would be used by Bruning on the Missouri River project. The project was the Nebraska Department of Roads' Maple Street project near Elkhorn, Nebraska. This project was to be done in segments over several years. The general contractor for the Maple Street project was Vrana Construction Company, and Commercial Seeding had a subcontract for the seeding and erosion control work. Vrana had a segment ready for seeding on May 9, 1985, and

Commercial Seeding began disking at that site on May 11. At that time, Bruning had not received notice from McArdle that any portion of the Missouri River levee was ready for seeding.

There is conflict in the record as to when McArdle next contacted Bruning. Murray McArdle has asserted various dates and times, insisting that each was when he told Bruning to commence seeding on one-half of the Missouri River project. Robert Bruning testified that McArdle spoke with him around the 23d of May and told him that one-half of the project would be ready to be seeded in a few days. Robert Bruning also testified that he was first asked to the job after Memorial Day, around the 29th or the 30th of May. In a phone conversation on June 3 or 4, Robert Bruning told McArdle that he could be on the job around June 10, as he had made arrangements for another crew from the Gerald Roach firm in Lincoln, Nebraska, to help complete the Maple Street project so that he could go to the Missouri River levee project. At that time, McArdle told Robert Bruning that he had already secured another firm to do the seeding. Behrens Construction Company came on the job on June 11. Bruning was never allowed to do any of the seeding on the levee project. The wildlife habitat was seeded by Lanoha Nursery after McArdle went to the nursery directly and contracted for it to do the seeding job. No written notice was ever given to Bruning to commence work.

Section 6 of the subcontract provided in part:

> (b) In the event the Subcontractor fails to comply or becomes disabled from complying with the provisions herein as to character or time of performance, and the failure is not corrected within five (5) days after written request by the Contractor to the Subcontractor, the Contractor, by subcontract or otherwise, may without prejudice to any other right or remedy, take over and complete the performance of this Subcontract at the expense of the Subcontractor, or without taking over the work, may furnish the necessary materials and/or employ the workmen necessary to remedy the situation at the expense of the Subcontractor.

All parties concede that no written notice was given to Bruning

to commence work at any time, either to notify the appellee what the appellant felt was Bruning's failure of performance, or to give the appellee time after a written notice was issued before another contractor was called onto the job. The district court found that the failure to give any written notice to the appellee before substituting a third party to perform seeding was a breach of the subcontract by McArdle, and awarded damages of $19,580.

The appellant contends that the district court erred in finding that McArdle breached the subcontract and in awarding damages to Bruning. The appellee cross-appeals and contends that the district court erred in not awarding Bruning the profits anticipated from the planting of the wildlife habitat, amounting to an additional $3,500 in damages.

Although the exact date that the appellee was requested to report to work is contested, the trial court found that it was communicated to Bruning on May 28, 1985, that Bruning needed to come to the site and begin seeding. As this finding is not clearly wrong, it will be upheld by this court. *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985).

However, it is uncontested that no written notice was given to Bruning that unless Bruning performed immediately, McArdle was going to hire someone else to complete the work on the Missouri River project. Section 6(b) of the subcontract in effect between the parties required that if McArdle felt that Bruning had failed to perform the contract in a timely manner, the general contractor (McArdle) must give 5 days *written* notice to the subcontractor, Bruning, to cure the defect. If Bruning had not cured the defect within the 5 days given, McArdle could take over the subcontract or, in the alternative, hire another subcontractor to perform the subcontract.

Section 6(b) of the subcontract provided the general contractor with a remedy if it felt the job was not being done according to the contract terms. Instead of complying with the notice provisions that McArdle itself demarcated in the subcontract, the appellant chose merely to hire another subcontractor to perform the work, without giving Bruning an opportunity to cure any defect. This noncompliance with the contract terms constituted a breach of the contract by McArdle,

entitling Bruning to the profits it lost because of the breach. The trial court was therefore not in error in awarding damages to Bruning.

The appellant argues that the decision of the trial court cannot be sustained, because in its decision no finding was made that the appellee was ready, willing, and able to perform the terms of the subcontract at the time McArdle hired another to perform. It is true that "a party who has failed or refused to perform the terms and conditions imposed upon him by a contract, or has not been ready, willing, and able to perform same, cannot recover for a breach thereof by the other party." *Bodtke v. Bratten*, 166 Neb. 36, 44, 88 N.W.2d 159, 165 (1958). However, it is implicit in the findings of the district court that the appellee was ready, willing, and able to perform on the subcontract. The district court found that on May 28, 1985, McArdle requested Bruning to commence work on the project. In addition, the court found that during the conversation of June 3 or 4 when Murray McArdle stated that he would have another perform the work, Robert Bruning told McArdle that he would have a crew with a mulcher on the project by June 10, 1985. This offer was refused by McArdle. In fact, Behrens Construction did not start work on the project until June 11, 1 day after Bruning had assured McArdle that it would be on site to perform the seeding. These findings are amply supported in the record. The contention of the appellant that the decision of the district court cannot stand because of a failure to find that the appellee was ready, willing, and able to perform is without merit.

However, the trial court was in error in calculating the damages due Bruning because of the breach. When a breach of contract occurs, the plaintiff is entitled to the full profit he would have realized under the contract. See *Wiebe Constr. Co. v. School Dist. of Millard*, 198 Neb. 730, 255 N.W.2d 413 (1977). In the factual findings made by the district court, the trial court disregarded the portion of the testimony with respect to the anticipated profit of $3,500 for the planting of the trees in the wildlife habitat. The appellee established the profit lost on the portion of the contract devoted to the wildlife plantings and is therefore entitled to this amount in damages as well. Bruning

had provided Lanoha Nursery with a list of the trees needed under the subcontract. Lanoha Nursery proposed to deliver and plant the wildlife habitat planting for $12,500. These terms were orally agreed to by Robert Bruning and Lanoha Nursery. The appellee bid the tree planting to McArdle for $16,000, thereby ensuring Bruning a profit of $3,500 on the wildlife habitat plantings. Because Bruning established these lost profits with sufficient certainty, Bruning succeeds on this cross-appeal, and the opinion of the district court must be modified to allow Bruning an additional $3,500 in lost profits.

The judgment of the district court is hereby affirmed as modified.

AFFIRMED AS MODIFIED.