CENTRAL STATES HEALTH & LIFE COMPANY OF OMAHA,
APPELLEE, V. MIRACLE HILLS LIMITED PARTNERSHIP, A NEBRASKA
LIMITED PARTNERSHIP, APPELLANT.
456 N.W.2d 474

Filed June 15, 1990. No. 88-458.

James F. Fenlon, of Harris, Feldman Law Offices, for appellant.

Gregory J. Benak, of Hotz, Kizer & Wintz, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

This action involves a lease agreement which was rendered nonperformable because of a then-existing zoning regulation prohibition. Central States Health & Life Company of Omaha (Central States), the lessee, filed an action against Miracle Hills Limited Partnership (Miracle Hills), the lessor, to recover prepaid rent and a security deposit and seeking reimbursement for utilities expenses and money spent to improve the leased premises for their intended use. Miracle Hills counterclaimed for the money it had expended in preparing the property for the tenancy of Central States and for the rent which Miracle Hills lost as a result of Central States' failure to perform under the lease. Miracle Hills appeals the judgment of the district court awarding Central States the amount of $8,348.19 and dismissing Miracle Hills' counterclaim.

On September 9, 1985, Miracle Hills and Central States entered into a written lease agreement for four bays in the Miracle Hills shopping center in Omaha for a term of 3 years. Paragraph 3 of the lease agreement provided that Central States would use the premises for "printing and storage of related items and no other purpose." The same paragraph provided that Central States "shall not use the premises nor permit them to be used for any unlawful business or purpose whatsoever." Paragraph 12 of the lease provided:

> Lessee shall keep the premises and operate his business therein in a manner which shall be in compliance with all applicable laws, ordinances, rules and regulations of the city, county, state and federal government and any department thereof, will not permit the premises to be used for any unlawful purpose, and will protect the Lessor and save Lessor and the premises harmless from any and all fines and penalties that may result from or be due to any infractions of or non-compliance with such laws, ordinances, rules and regulations.

As provided by the lease, each party made and paid for certain improvements and modifications to the premises.

Before Central States moved in, the parties learned in December 1985 that the city of Omaha would not grant Central States a certificate of occupancy because the premises were zoned first commercial (C-1) and the use intended by Central States was not allowed in a C-1 zone.

The intended use of the premises communicated by Central States to Miracle Hills was for a printshop and storage. The lease which the parties executed provided at paragraph 3: "USE: The Lessee shall use and occupy the premises for printing and storage of related items and no other purpose. The Lessee shall not use the premises nor permit them to be used for any unlawful business or purpose whatsoever."

After execution of the lease agreement, each party spent certain sums of money adapting the premises to the use for which Central States intended to use the premises. The parties stipulated that Central States spent $5,629 for improvements to the premises, $2,383.33 for prepaid rent and a security deposit, and $335.86 for utilities. Miracle Hills spent $18,569.23 for improvements to the premises.

Central States was never able to move into the premises. It received a letter dated December 6, 1985, from the city of Omaha's planning department, stating that the "property is zoned First Commercial which does not allow a print shop or storage use unless approved by the Zoning Board of Appeals." Miracle Hills filed an application with the zoning board of appeals requesting a variance to permit Central States' intended use of the premises. At a hearing held on December 19, 1985, which was attended by representatives of both Central States and Miracle Hills, the request for a variance was denied. That decision was not appealed to the district court by either party.

On January 22, 1986, Central States wrote a letter to Miracle Hills attempting to rescind the lease from its inception. Central States requested $8,068.88 as a refund for expenses incurred, including rent, security deposit, improvements, and utilities. On April 3, 1986, Miracle Hills responded, demanding full performance by Central States of its obligations under the lease, i.e., payment of $9,100 for improvements made by Miracle Hills and $5,729.15 for rent due from December 1985 through April 1986. A replacement tenant entered the premises

in April 1986.

Central States filed suit against Miracle Hills on November 13, 1986, alleging that Miracle Hills represented that the premises were fit for Central States' intended use and that Miracle Hills knew or should have known of the C-1 zoning that would prohibit Central States from making use of the premises. Central States prayed for damages of $8,348.19, covering the prepaid security deposit and rent, utilities expenses, and improvements.

In its answer, Miracle Hills alleged that it made no representations to Central States and that under the provisions of the lease agreement, Central States assumed the obligation of determining that the business it wished to conduct on the premises was lawful and permitted by the ordinances of the city of Omaha. Miracle Hills counterclaimed for $16,224.98 in rent and $9,100 for reimbursement for certain improvements to the premises.

Although the pleadings do not specifically so allege, it is apparent that the parties tried this case on the theory of rescission and restitution. The trial court determined that the landlord (Miracle Hills) was in a better position to determine at the outset whether a contemplated use is violative of zoning regulations. Accordingly, following a waiver of a jury, trial was held and the court entered a judgment in favor of Central States in the amount of $8,348.19 and dismissed Miracle Hills' counterclaim.

On appeal, Miracle Hills assigns as error (1) the entry of judgment in favor of Central States, (2) the dismissal of the counterclaim of Miracle Hills, and (3) the overruling of Miracle Hills' motion for a new trial.

There is little, if any, disagreement on the facts. Central States told Miracle Hills or its representative that it wanted the premises for a printshop and storage. The lease agreement recites that purpose. An agreement was reached as to what improvements each party would make to the premises. Central States did not know of the zoning and the prohibition as to its use of the premises until after the lease was made and it was getting ready to move in. The representative of Miracle Hills testified that prior to the denial of the certificate of occupancy

by the city of Omaha, he did not know that the use intended to be made of the premises by Central States was prohibited under the Omaha city ordinances.

In an action at law, where a jury has been waived and evidence is in conflict, the Supreme Court, in reviewing the judgment, will presume that controverted facts were decided by the trial court in favor of the successful party, and those findings will not be disturbed on appeal unless clearly wrong; it is not within the province of the Supreme Court to resolve conflicts in or reweigh evidence. *Bruning Seeding Co. v. McArdle Grading Co.*, 232 Neb. 181, 439 N.W.2d 789 (1989).

On questions of law, the Supreme Court has an obligation to reach a conclusion independent of that reached by the trial court. *State v. Wren*, 234 Neb. 291, 450 N.W.2d 684 (1990).

It is fundamental that a contract for an illegal purpose is void and unenforceable. See, *Homami v. Iranzadi*, 211 Cal. App. 3d 1104, 260 Cal. Rptr. 6 (1989); *Arthur v. Trindel*, 168 Neb. 429, 96 N.W.2d 208 (1959) (if an act is prohibited by statute, an agreement in violation of the statute is void). It is also fundamental that if premises are leased for a purpose prohibited by law, the lease is void and unenforceable by either party thereto against the other. See, *Naseef v. Cord, Inc.*, 90 N.J. Super. 135, 216 A.2d 413 (1966); *Carhart v. Lapetina*, 137 N.J.L. 531, 61 A.2d 49 (1948); *American Postal Workers v. U. S. Postal Service*, 682 F.2d 1280 (1982); *Young v. Texas Company*, 8 Utah 2d 206, 331 P.2d 1099 (1958); Annot., 37 A.L.R.3d 1018 § 2[a] (1971).

If premises are leased for a particular purpose not permitted because of a zoning restriction, are the premises leased for a purpose prohibited by law, thereby rendering the lease void and unenforceable? Stated another way, the issue of this appeal is whether a lessee is relieved of liability for obligations under the lease when the leased premises cannot be used for the purpose or purposes for which they were leased due to zoning restrictions.

This appears to be a case of first impression in Nebraska. The result reached by other courts which have addressed this issue depended on the rule followed by the particular court.

There seem to be four general rules applicable in situations

such as this. (1) The lease is unenforceable where the contemplated use of the leased premises is prohibited by a zoning regulation. See, *Shontz Co. v. Laffay*, 225 A.D. 263, 232 N.Y.S. 614 (1929) (although occupation was unlawful, lease was not unlawful at inception because of possibility that necessary permit could be obtained, therefore lessee could recover security deposit); *Ober v. Metropolitan Life Insurance Co.*, 157 Misc. 869, 284 N.Y.S. 966 *award denied on reargument* 157 Misc. 872, 284 N.Y.S. 966 (lease void and unenforceable, therefore lessor not entitled to rent and lessee not entitled to use and occupancy). (2) The lease is valid where a serviceable use of the premises remains which is consistent with the limitations of the lease, see *Warshawsky v. American Automotive Prod. Co.*, 12 Ill. App. 2d 178, 138 N.E.2d 816 (1956); the lease is not valid if a serviceable use does not remain, see *30th St. Corp. v. Straub Delivery Co.*, 41 Misc. 2d 948, 246 N.Y.S.2d 455 (1963), *aff'd* 44 Misc. 2d 78, 253 N.Y.S.2d 18 (1964). (3) The lease is not necessarily void and unenforceable where the zoning authorities have the power to grant a variance or the continuance of a conforming use. See *Verschell v Pike*, 85 A.D.2d 690, 445 N.Y.S.2d 489 (1981). However, the lease is void and unenforceable if the party seeking to have the lease declared void and unenforceable because of a zoning restriction has made a diligent effort to obtain a variance which would allow the contemplated use and was unsuccessful. See *Schlesinger v. Levine*, 28 Misc. 2d 654, 212 N.Y.S.2d 904 (1961). (4) The lease is enforceable because the lessee is presumed to have known about the zoning restrictions and in executing the lease assumed the risk that a variance would not be granted. See *Pioneer Trust & Savings Bk. v. Zonta*, 74 Ill. App. 3d 614, 393 N.E.2d 548 (1979).

The rule which we find to be the most practicable and reasonable under these circumstances is a modification of the first rule articulated, i.e., when the lease restricts the use of the premises to a single purpose, a prohibition in the zoning regulations against such use terminates the lease and relieves the parties of all obligations thereunder. See, *Walker v. Southern Trucking Corporation*, 283 Ala. 551, 219 So. 2d 379 (1969); *Hyland v. Parkside Investment Co., Inc.*, 10 N.J. Misc. 1148,

162 A. 521 (1932).

Although the trial court found that the landlord was in a better position to determine whether the contemplated use was violative of the zoning requirements and therefore permitted the recovery of damages by Central States, we do not agree. Both parties had equal access to the zoning regulations of the city of Omaha and could have determined whether they permitted the contemplated use of the premises. Neither party was *excusably* ignorant of the facts affecting the use of the premises and neither party is entitled to restitution. See Restatement (Second) of Contracts § 198 (1981). When the parties are asserting rights founded upon an illegal and void contract, the court leaves the parties to such a situation just where they placed themselves and as the court found them. See, *Abramson v. Abramson*, 161 Neb. 782, 74 N.W.2d 919 (1956); *Webber v. Spencer*, 148 Neb. 481, 27 N.W.2d 824 (1947).

The judgment of the district court in favor of Central States on its claim for restitution is reversed and dismissed, and the judgment in favor of Central States on the counterclaim of Miracle Hills is affirmed.

AFFIRMED IN PART, AND IN PART
REVERSED AND DISMISSED.

WHITE, J., concurring.

I agree that sophisticated lessors and lessees may equitably be left in the circumstances that they created. However, I am not prepared to state that given different facts, the harsh rule here applied should uniformly obtain. The holding would best be interpreted to apply to the facts in this case only.

FAHRNBRUCH, J., joins in this concurrence.