2002 SD 28

**Earl D. BOHLEN, Plaintiff and Appellant,**

v.

**Kathy TYLER, d/b/a Tyler Computer Service, Defendant and Appellee.**

**No. 21949.**

Supreme Court of South Dakota.

Argued on Jan. 8, 2002.

Decided Feb. 27, 2002.

David R. Strait of Austin, Hinderaker, Hopper, Strait & Bratland, Watertown, Attorneys for plaintiff and appellant.

Gregory P. Grajczyk of Boos and Grajczyk, Milbank, Attorney for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] Earl D. Bohlen (Bohlen) sued Kathy Tyler, d/b/a Tyler Computer Service (Tyler), for an alleged breach of a lease agreement. The circuit court granted summary judgment in Tyler's favor. Bohlen appeals. We reverse.

## FACTS

[¶ 2.] On July 20, 1998, Tyler entered a three-year lease agreement with Bohlen, the owner of Whetstone Mall in Milbank, South Dakota. Pursuant to this agreement, Tyler was to rent office space in the Whetstone Mall for her computer business. In March of 1999, Tyler moved out of the rented office space and into a larger building she purchased. Tyler decided she needed a larger location to accommodate her computer business.

[¶ 3.] Tyler argues that prior to the move, she had been released from the lease agreement with Whetstone Mall. Tyler bases that claim on a conversation she had with Betty Dockter, (Dockter), Bohlen's property manager, in which Dockter indicated that there would be no problem re-renting the office space where Bohlen had her computer store. Tyler stated in her deposition that she assumed she was "out of the contract" after that conversation. Dockter, however, said that she informed Tyler that she was still obligated for the Whetstone Mall lease payments.

[¶ 4.] In response to this demand for rent, Tyler wrote a letter to Bohlen stating the following:

Last week, Betty informed me that you were still expecting me to pay rent on the office space I had moved from on March 20. I guess there had been a misunderstanding on my part. I had earlier requested that I be released from my three-year contract. I was told that you were renting the office and thus assumed that I had been released from the contract.

The letter proceeded to explain how Tyler could not afford to pay rent and make payments on her new office. It then alleged the lease agreement was unenforceable by stating: "Also, I understand that the office space I was renting is not zoned

for retail. So, in essence I was illegally using the space you had rented me . . . I am again asking to be relieved from my contract. . . ."

[¶ 5.] Bohlen did not release Tyler, but rather filed a petition for recovery of the rent. Both parties then filed motions for summary judgment. The circuit court judge, after viewing a number of affidavits and exhibits, denied Bohlen's motion, but granted summary judgment in favor of Tyler. Bohlen appeals the lower court's decision on the following issue:

> **Whether the trial court erred by granting summary judgment based on its finding that the property use was in violation of Milbank's city zoning ordinances.**

## STANDARD OF REVIEW

[¶ 6.] We have previously held that:

> [S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Further, [i]f no issues of material fact exist, and legal questions have been correctly decided, we will affirm.

*Tri County Landfill Assoc., Inc. v. Brule County*, 2000 SD 148, ¶ 9, 619 N.W.2d 663, 667. When reviewing a grant of summary judgment, "[t]he evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Meyer v. Santema*, 1997 SD 21, ¶ 8, 559 N.W.2d 251, 254 (quoting *Lamp v. First Nat'l Bank of Garretson*, 496 N.W.2d 581, 583 (S.D. 1993)). "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *Id.* (citation omitted).

## DECISION

[¶ 7.] The trial court, in granting summary judgment, held that the purpose for which the premises was leased was not a permitted use under Milbank's zoning ordinances 17.32.020 and 17.32.030.

[¶ 8.] Tyler submitted this ordinance violation as a defense to Bohlen's claim for the lease payments. The trial court relied on *Central States Health and Life Company of Omaha v. Miracle Hills Limited Partnership*, 235 Neb. 592, 456 N.W.2d 474 (1990) in its summary judgment order. This case presents four methods for handling a lease where the property use violates a zoning ordinance. Those four methods include:

> (1) The lease is unenforceable where the contemplated use of the leased premises is prohibited by a zoning regulation.
> (2) The lease is valid where a serviceable use of the premises remains which is consistent with the limitations of the lease.
> (3) The lease is not necessarily void and unenforceable where the zoning authorities have the power to grant a variance or the continuance of a conforming use.
> (4) The lease is enforceable because the lessee is presumed to have known about the zoning restriction and in executing the lease assumed the risk that a variance would not be granted.

*Id.* at 597, 456 N.W.2d 474 (internal citations omitted).

[¶ 9.] In *Central States Health and Life Company*, the court determined that the lease was "void ab initio" based on a zoning ordinance violation. Under Milbank City Ordinances 17.32.020 (permitted uses) and 17.32.030 (special uses), however, it is it unclear whether a violation has occurred in the case at hand. Moreover, it was Tyler's burden to prove that the zoning ordinance made her use of the building illegal. In *McNally v. Moser*, the Mary-

land court, while explaining this burden, stated the following:

> It was the appellants who asserted that they had been relieved of their liability under the lease and who had the burden of persuading the court that [the zoning ordinance] produced the result they claim—that the use of the leased premises for a professional office was impossible in fact. The appellants offered neither witnesses nor other evidence requiring such a finding.

210 Md. 127, 122 A.2d 555, 560 (1956). The court further said:

> Dr. McNally, [appellant and lessee,] having brought about the challenge to the use so that he could escape his responsibilities under the lease, could not stand idly by and, because of a notice to that effect from an administrative official, gladly accept as fact that his use of the office was illegal ... [H]e was under an obligation ... to continue that use, or at least to wait until impossibility became a fact, not merely a possibility. One may not rely on illegality or invalidity where the doing of that said to be forbidden may reasonably be made legal and possible through administrative or judicial action.

*Id.* at 561. In *St. Luke's House, Incorporated, v. DiGiulian,* 274 Md. 317, 336 A.2d 781 (1975), this holding was cited approvingly as the court addressed whether a property use violated a restricted covenant. In *St. Luke's,* the court said, "One who relies on illegality, failure of consideration or other affirmative defenses, has imposed on him the burden of persuasion." *Id.* at 787. It further said that "prevention of the use of the premises for the purpose contemplated by the lease may serve to excuse performance, but that the one asserting the defense must prove the existence of that prohibition." *Id.* at 788 (citing 49 AmJur2d Landlord and Tenant § 269 (1970) (other citations omitted)).

[¶ 10.] Tyler, in support of her motion for summary judgment, relied solely on the ordinances. Bohlen resisted by showing evidence regarding the present uses of other tenants in the leased premises. The record shows that the Whetstone Mall is located in a B-3 Highway Business District Zone. Pursuant to Milbank City Ordinance Section 17-32-010(1), a B-3 Highway business is supposed to: "serve the needs of the highway user and the automobile, and in so doing to establish appropriate locations which will not cause undue traffic congestion."

[¶ 11.] The record on file consists of various affidavits. Dockter stated in her affidavit that the City of Milbank has never filed any proceedings involving a violation of this ordinance. Additionally, Dockter lists the other businesses currently in the Whetstone Mall: a video store, tanning salon, mental health counseling agency, investment brokerage, cellular phone business and service station. An affidavit given on January 22, 2001, by Cynthia Schumacher, a Milbank City employee involved with enforcing the zoning ordinances, states that neither Tyler Computer Service, nor any other proprietor located in the Whetstone Mall, has been notified of any zoning ordinance violation. Her deposition further states that "[t]he City of Milbank never made any affirmative decision or action to interfere, prevent, or hinder Tyler Computer Service or its normal operation during its use and occupancy of the Whetstone Mall premises." Additionally, Schumacher explained the characteristics of a B-3 Highway Business District. The B-3 zone permits retail establishments for serving the needs of highway travelers, "including but not limited to such facilities as drug stores, gift shops and restaurants." Schumacher further explained that permits for other uses, "including but not limited to various businesses, offices, contractor shops, and

other uses which in the opinion of the Planning Commission are of the same general character as those enumerated in the B–3 District."

[¶ 12.] There is no dispute that Tyler used the premises for a computer store for a considerable period of time without any problems arising with the City involving the use. The only time the issue of legality of use came up was when disputes over the liability regarding lease payments surfaced. Therefore, the burden obviously falls on Tyler to show the premises could not be used for such purpose. Further, we find that the appropriate standard for resolving this type of dispute is whether or not the leased premises can be used for the purpose intended under the lease where the ordinance provides for a possible variance or conditional use. In fact, in *Central States Health & Life Company*, the trial court acknowledged that prior to trial the appropriate city zoning authorities refused to authorize the intended use, which is not the case here. *See Central States Health & Life Co.*, 456 N.W.2d at 476.

[¶ 13.] In reviewing this record, we find sufficient evidence to indicate that genuine issues of material fact exist. *See Tri County Landfill Assoc., Inc. v. Brule County*, 2000 SD 148 at ¶ 9, 619 N.W.2d at 667. Based on our decision on this issue, it is unnecessary to address any other issues presented on appeal. Therefore, we reverse and remand to the trial court for a determination as to whether a violation of the zoning ordinances occurred.

[¶ 14.] GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, and GORS, Acting Justice, concur.