REQUESTED BY: Stephen B. Curtiss, Director Nebraska Health and Human Services System, Department of Health and Human Services Finance and Support
This is in response to your request for an opinion from the Attorney General on the following two questions: 1) whether, pursuant to the provisions of Neb. Rev. Stat. § 71-7606(3) (Cum. Supp. 2002), the Nebraska Health and Human Services System (`NHHSS') erred in awarding a grant from the Nebraska Health Care Cash Fund; and, 2) if so, whether the grant is void as a matter of law?
Pursuant to the provisions of the Nebraska Health Care Funding Act, Neb. Rev. Stat. §§ 71-7605 to 71-7614 (Cum. Supp. 2002), specifically Neb. Rev. Stat. § 71-7614, the Department of Health and Human Services System Finance and Support, a division of NHHSS, with the recommendation of the Nebraska Health Care Council, determines whether to approve or disapprove grant applications funded with money from the Nebraska Health Care Cash Fund (hereinafter `Cash Fund').
In 2002, the NHSS/Nebraska Reproductive Health Program applied for a grant from the Cash Fund in order to establish a Teen Clinic Pilot Project. Said project was to be administered by two sub-grantees, Lincoln Planned Parenthood and Hastings Family Planning, and the sub-grantees were to receive virtually all of the grant funds.
As set forth in the grant application, a copy of which was provided to this office, the Teen Clinic Pilot Project involved creating `alternative' clinics at the business locations of the sub-grantees, Lincoln Planned Parenthood and Hastings Family Planning, using a `Teen Night' concept. The `Teen Night' concept was designed, marketed and operated exclusively for adolescents, ages nineteen and younger, to be held one evening a week. College age adults were to serve as educators and mentors in both group and individual sessions. An extensive marketing campaign was planned in both schools and human services agencies to advertise the sessions. At each session, reproductive health services were to be provided to participating teenagers that included birth control, pregnancy tests, pap smears and tests for detecting sexually transmitted diseases.
In the fall of 2002, the grant application was approved by the Nebraska Department of Health and Human Services Finance and Support. The total amount of funding approved for the grant was to be $100,000 paid over three years, with $25,000 of that funding occurring in the first fiscal year, starting October 1, 2002 through September 30, 2003. According to NHHSS correspondence dated November 5, 2002, Hastings Family Planning, Inc. received $11,672, and Planned Parenthood of Lincoln received $13,328 from the Cash Fund for the first year of grant funding.
Neb. Rev. Stat. § 71-7606(3) (Cum. Supp. 2002), which is applicable to grants awarded from the Cash Fund, provides as follows:
 No funds appropriated or distributed under the act shall be used for abortion, abortion counseling, referral for abortion, school-based health clinics, or research or activity of any kind involving the use of human fetal tissue obtained in connection with the performance of an induced abortion or involving the use of human embryonic stem cells for the purpose of obtaining funding for such use.
(Emphasis added). (Enacted by the Legislature, Laws 2000, LB 1427, § 3).
You stated in your opinion request that NHHSS has information indicating that both of the sub-grantees, Lincoln Planned Parenthood and Hastings Family Planning, are recipients of federal grants for the establishment and operation of voluntary family planning projects, pursuant to 42 U.S.C. § 300. Implementing regulations promulgated in accordance with said act provide that any public or nonprofit private entity may apply for a grant, pursuant to an application process, which includes a description of the project to be funded. See42 C.F.R. § 59.3 and 59.4.
The regulations also provide in pertinent part as follows:
 . . . A project must: (i) Offer pregnant women the opportunity to be provided information and counseling regarding each of the following options: (A) Prenatal care and delivery; (B) Infant care, foster care, or adoption; and (C) Pregnancy termination. (ii) If requested to provide such information and counseling, provide neutral, factual information and nondirective counseling on each of the options and referral upon request . . .
42 C.F.R. § 59.5(a)(5). (Emphasis added).
Thus, pursuant to said regulations under subpart (i), projects funded by such federal grants must offer the opportunity to be provided information and counseling regarding an abortion, and under subpart (ii) if requested, provide additional information and nondirective counseling on abortions and provide a referral for an abortion procedure upon the request of the pregnant mother.
The question posed then is whether the above quoted provisions of state and federal law are inherently incompatible, so that in order to comply with 42 C.F.R. § 59.5(a)(5), the sub-grantees, Planned Parenthood of Lincoln and Hastings Family Planning, must be in violation of Neb. Rev. Stat. § 71-7606(3). Or in other words, as you described in your opinion request, if a pregnant teen attends the Teen Clinic operated by Planned Parenthood of Lincoln or Hastings Family Planning pursuant to the state grant, will the federal regulations require the sub-grantee to give abortion counseling upon request, which is a violation of § 71-7606(3)? We are of the opinion that both provisions, when undertaken by the same entity, are inconsistent and result in a violation of § 71-7606.
It is clear from the language of § 71-7606, that no funds under the Nebraska Health Care Funding Act shall be used for abortion, abortion counseling or referrals for abortion. Because of such restrictions, organizations that accept federal grants pursuant to42 C.F.R. § 59.5(a)(5) and are required by the section to provide abortion counseling and referrals for abortion, cannot also accept funds from the Cash Fund. An entity receiving both grants cannot fulfill the requirements of 42 C.F.R. § 59.5(a)(5) without violating § 71-7606, and vice versa.
The fact that the sub-grantees of the project receive grant funding under 42 C.F.R. § 59.5(a)(5) and are required to fulfill requirements of the section that are prohibited by § 71-7606, makes the grant from the Cash Fund void as a matter of law. See Central States Health Life Co. of Omaha v. Miracle Hills Ltd., 235 Neb. 592, 456 N.W.2d 474 (1990). (As a general rule, contract for illegal purpose is void and unenforceable).
Therefore, for the reasons indicated above, NHHSS did err in awarding the grant from the Nebraska Health Care Cash Fund to NHHS/Nebraska Reproductive Health Program for the purposes of funding the Teen Clinic Pilot Project, and the grant is void as a matter of law.
Sincerely,
 JON BRUNING Attorney General
 Jason W. Hayes Assistant Attorney General
Approved:
______________________________ Attorney General