PIONEER TRUST AND SAVINGS BANK *et al.*, Plaintiffs-Appellants, *v.* ANGELO ZONTA *et al.*, Defendants-Appellees.

First District (4th Division)    No. 80-1200

Opinion filed May 7, 1981.

Lurie & Cahan, of Chicago (Mel Cahan, of counsel), for appellants.

George Pappas, of Chicago (Neville, Pappas & Mahoney, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The essential factual setting giving rise to the issues in this appeal is that the defendants, Angelo Zonta and Mike Gentile, breached a lease agreement with the plaintiffs, Pioneer Trust and Savings Bank, individually and as trustee of a land trust, and Louis Seidman, the beneficial owner of the trust. The plaintiffs procured a new lessee who was to pay more in rent over the period of the breached lease than the defendants would have paid. However, it is the plaintiffs' contention that they suffered damages far in excess of the $6987 awarded by the trial court because the

terms of the mitigating lease were not as favorable as those of the breached lease. The fact that the lease was breached was determined by this court in *Pioneer Trust & Savings Bank v. Zonta* (1979), 74 Ill. App. 3d 614, 393 N.E.2d 548. The plaintiffs also contend that the $8001.60 award for attorneys' fees was inadequate. The defendants do not appeal the award of damages or the award of fees.

On April 21, 1975, the parties entered into a lease agreement under which the defendant Zonta was to lease a building owned by the plaintiffs from April 1975 until May 31, 1980. The defendants were to pay $2600 per month. Gentile signed the lease as Zonta's guarantor. Although the defendants did not take possession of the premises or pay any rent, they did begin preliminary remodeling work.

In September 1975, the plaintiffs brought an action against the defendants for breach of the lease. The plaintiffs alleged in that action that as a result of the defendants' breach the premises remained vacant from June 1, 1975, until February 29, 1976, and that the plaintiffs therefore lost $23,400 in rent. They alleged also that it cost them $4000 to repair damage caused by the defendants' remodeling work. In addition, the plaintiffs sought to recover attorneys' fees and the cost of title insurance for the property.

The trial court found that the lease was not binding on the parties and denied the plaintiffs' claim for payment of rent and attorneys' fees under the lease. Nevertheless the court found that the plaintiffs could recover for damages incurred when the parties were negotiating the lease. Accordingly, the trial court entered judgment in favor of the plaintiffs in the amount of $1500 for damage caused to the building by the defendants, $300 in attorneys' fees, and $145 for title insurance. The total judgment amount was $1945 plus costs.

The plaintiffs appealed that judgment. In *Pioneer Trust & Savings Bank v. Zonta* this court affirmed that part of the trial court's order which granted damages to the plaintiffs for the period during the negotiation of the lease but reversed the trial court's determination that the lease was not binding on the parties. We wrote:

> "Based on the discussion above, we reverse that part of the order of the trial court which denied Pioneer Trust and Seidman adequate damages. Pioneer Trust and Seidman are entitled to the payment of rent owed to them under the lease and the expenses they incurred because of the breach of the lease. The expenses should include the cost for any property damage, the title insurance payment and reasonable attorneys' fees" [under the attorneys' fees clause of the lease]. (*Pioneer Trust & Savings Bank v. Zonta* (1979), 74 Ill. App. 3d 614, 618, 393 N.E.2d 548, 552.)

The cause was remanded "for proceedings not inconsistent with this opinion."

Upon remand, the plaintiffs filed a motion for entry of judgment and a petition requesting a hearing on the issue of additional attorneys' fees. The defendants moved for a post-mandate hearing on the issue of damages. Specifically, the defendants sought to establish that in November 1975 the plaintiffs entered into a lease with the State of Illinois and that under the terms of this mitigating lease the plaintiffs were to receive more money as rent than they would have received under the breached lease. The defendants sought to establish that the plaintiffs therefore suffered no damages from their breach. The plaintiffs objected, claiming that our mandate in the first appeal required that the trial judge enter judgment on the damages as proven in the earlier proceeding. The trial court granted the defendants' motion and conducted a post-mandate hearing on the issue of damages.

The breached lease provided for rents of $2600 per month for 60 months between June 1, 1975, and May 31, 1980, for a total of $156,000. The mitigating lease provided for rents of $3802.08 per month. It was in effect for 51 of the 60 months covered by the breached lease, that is, March 1, 1976, to May 31, 1980. Rentals under the mitigating lease over the period covered by the breached lease total $193,906.08. Thus, the mitigating lease provides for $37,906 more in total rents than does the breached lease.

However, the plaintiffs claim that they suffered $174,508 in damages because of costs incurred in obtaining the mitigating lease and because the terms of that lease are less favorable to them than were the terms of the breached lease. Of the expenses claimed, $35,223 are not in dispute. For example, it is not disputed that the plaintiffs suffered out-of-pocket losses of approximately $1092 during the period between the leases and that this loss is attributable to the defendants' breach. It is also agreed that the plaintiffs paid $18,593 for tax increases which would have been the defendants' responsibility under the terms of the breached lease. Similarly, it is agreed that under the mitigating lease the landlord is responsible for water, gas and snow removal, while these expenses would have been the tenant's responsibility under the breached lease. This additional responsibility, which it is agreed is attributable to the defendants' breach, caused an out-of-pocket loss to the plaintiffs of $9669. These expenses, projected over the five remaining months covered by both leases, total $1522. The defendants agree they owe $3957 for maintenance expenses and $390 for maintenance expenses which are projected to be incurred over the remaining five months covered by both leases.

Of the $174,508 in damages claimed by the plaintiffs, $139,285 are in dispute. An expert witness, testifying for the plaintiffs, compared the option provision of the breached lease and the option provision of the mitigating lease and opined that the value of the mitigating lease option, if

exercised by the tenant, was $62,693 less than the value of the breached lease option, if exercised by the tenant. Another expert testifying for the plaintiffs stated that the theoretical cost to the plaintiffs of expending their own money to complete the remodeling required by the mitigating tenant was $12,154. Also in dispute are the following: $25,571 claimed as damages by the plaintiffs as the cost of remodeling required by the mitigating tenant; $2030 paid in legal fees; $1000 paid to an accounting firm; $3387 paid for insurance; and $24,101 claimed as damages for time allegedly expended by Seidman and by laborers employed in his upholstery business. This time was expended in connection with obtaining a mitigating tenant, maintenance, and remodeling. Further, while the defendants admit that the plaintiffs suffered damages because "maintenance" was the tenant's responsibility under the breached lease but is the landlord's responsibility under the mitigating lease, they dispute $7600 of the $11,557 claimed by the plaintiffs as damages under the "maintenance" category. The plaintiffs' maintenance figure projected over the five remaining months covered by the breached lease is $1139. The defendants' figure projected over the five remaining months is $390. Thus, $749 of the $1139 claimed for maintenance as projected over the five remaining months is in dispute.

The plaintiffs claimed hundreds of different items as damages. For purposes of this appeal, we have categorized these items and characterized the position of the parties in the following chart. Many minor disputes as to amounts are resolved in the plaintiffs' favor.

|  | Claimed | Disputed | Not Disputed |
|---|---|---|---|
| Damages incurred prior to the mitigating lease | $ 1,092 | 0 | $ 1,092 |
| Property Tax increases (including projected costs) | 18,593 | 0 | 18,593 |
| Utilities and snow removal (including projected costs) | 11,191 | 0 | 11,191 |
| "Maintenance" (including projected costs) | 12,696 | 8,349 | 4,347 |
| Remodeling | 25,571 | 25,571 | 0 |
| Legal Fees | 2,030 | 2,030 | 0 |
| Accounting Fees | 1,000 | 1,000 | 0 |
| Insurance | 3,387 | 3,387 | 0 |
| Seidman's time and his laborers' time | 24,101 | 24,101 | 0 |

| | | | |
|---|---|---|---|
| Theoretical cost of the money used to finance remodeling | 12,154 | 12,154 | 0 |
| Loss due to less favorable option provision in mitigating lease | 62,693 | 62,693 | 0 |
| TOTALS | $174,508 | $139,285 | $35,223 |

At the conclusion of the evidence and the arguments of counsel, the trial court found that under the mitigating lease the plaintiffs received an increase in rentals totaling $37,906. Taking into account the expenses which were incurred by the plaintiffs in obtaining and maintaining the new tenancy, the court determined that the plaintiffs were entitled to receive $6987 as damages for the breach of the lease. The court did not specify which of the claimed damages were allowed or which were disallowed in reaching this figure. After hearing evidence and considering all relevant factors, the trial court awarded $8001.60 for attorneys' fees and costs incurred during post-mandate proceedings. The court refused to award fees incurred during the first appeal on the ground that the attorneys' fees provision of the lease did not apply to the appellate proceedings. Other facts concerning the attorneys'-fees issue are related in the discussion concerning that issue below.

The plaintiffs' first argument on appeal is that the appellate court mandate following the first appeal precluded the trial court from conducting post-mandate hearings on the issue of damages. They construe our opinion in the first appeal as remanding the cause solely for the entry of judgment for $23,400 as rent for the nine months that the premises were vacant plus attorneys' fees and expenses.

■■ Where, as here, the remand order contained in the appellate court's mandate is with directions for further proceedings in conformity to the opinion, the opinion of the reviewing court must be examined and consulted. (*Roggenbuck v. Breuhaus* (1928), 330 Ill. 294, 161 N.E. 780; *People v. Scanlan* (1920), 294 Ill. 64, 128 N.E. 328.) If specific directions are given, the trial court must follow them, but if no such directions are given, then it must be determined from the nature of the case what further proceeding would be consistent with the opinion. (*Town of Kaneville v. Meredith* (1935), 361 Ill. 556, 198 N.E. 857; *PSL Realty Co. v. Granite Investment Co.* (1979), 76 Ill. App. 3d 978, 395 N.E.2d 641.) Where the cause is remanded, judgment of reversal is conclusive only of the questions actually decided. (*People v. Lord* (1925), 315 Ill. 603, 146 N.E. 506.) Questions which have not actually been decided by the reviewing court and which were not at issue or involved in the appeal are not concluded and may be considered by the court below in subsequent

proceedings on the case. *Sifford v. Cutler* (1911), 248 Ill. 340, 94 N.E. 156; *R. M. C. Corp. v. Genco, Inc.* (1946), 330 Ill. App. 192, 71 N.E.2d 189.

■■ In the first appeal we reversed the trial court's determination that the lease was not binding and held that as a result the damages awarded were inadequate. Our statement that the plaintiffs were entitled to rents owed to them under the lease, expenses, costs for property damage, costs for title insurance, and reasonable attorneys' fees meant that as the defendants were bound by the lease the plaintiffs were entitled to damages for its breach. The issue of damages was not determined in the original trial or on appeal, and therefore on remand the trial court was entitled to take evidence on the issue. We do not believe that the trial court's action in conducting a hearing on the issue of damages was in any way inconsistent with our opinion or mandate.

The plaintiffs next contend that the trial court's findings concerning the amount of damages are contrary to the manifest weight of the evidence. The parties' appellate arguments are each based upon the rule of damages set forth in *Wanderer v. Plainfield Carton Corp.* (1976), 40 Ill. App. 3d 552, 351 N.E.2d 630. Under *Wanderer*, where a lease is breached the landlord may recover the rents owed to him but the breaching tenant may claim, by way of set-off, a credit for rents received under a mitigating lease, less other costs incurred by the landlord in "obtaining and maintaining" the mitigating lease.

As we understand it, the defendants claim a credit of $37,905 against the plaintiffs' claimed damages because while they owed $156,000 in rents under the breached lease, the landlord would receive $193,906 in rents under the mitigating lease. The plaintiffs claim that they incurred expenses of $174,508 in obtaining and maintaining the mitigating tenancy. The plaintiffs' damage claim of $174,508, when reduced by the $37,905 credit claimed by the defendants, is $136,603. The trial court allowed $6,987 in damages. Therefore, $129,616 of the damages claimed by the plaintiffs were disallowed by the trial court. The question before us is whether the trial court acted properly in disallowing $129,616 in damages.

■■ The amount of damages awarded by the trial court will not be disturbed on appeal unless it is manifestly erroneous. (*Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 321 N.E.2d 1; *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 281 N.E.2d 323.) Even where the reviewing court would have been better satisfied with different findings as to damages, it will not interfere with the trial court's award where the evidence is conflicting or where there is evidence in support of the verdict and there is no indication that the award was the result of passion, prejudice or corruption. (*Landolt v. Stratmann* (1967), 87 Ill. App. 2d 81, 230 N.E.2d 498.) Fixing the amount of damages is preeminently the function of the fact finder, and its determination will not be disturbed

unless it is obviously the result of passion and prejudice. *King v. City of Chicago* (1978), 66 Ill. App. 3d 356, 384 N.E.2d 22; *Maca v. Rock Island-Moline City Line, Inc.* (1964), 47 Ill. App. 2d 31, 197 N.E.2d 463.

Nothing in the record here suggests that passion, prejudice or corruption precipitated the trial court's award, and the defendant does not argue otherwise. As is set forth above, the defendants dispute $139,285 of the $174,508 in damages claimed. We believe that at least $129,616 of the damages in dispute could have been allowed, disallowed, or allowed in part and disallowed in part by the trial court as the trier of fact.

For example, the plaintiffs seek to be reimbursed for $25,571 expended to complete the remodeling required by the mitigating tenant. The trial court saw the plans for the remodeling and heard testimony concerning the type of work done. We believe that the trial court could properly have concluded that the money spent on remodeling was not actually an expense, but rather constituted a capital improvement which would increase the value of the premises and would not therefore properly figure into the calculation of damages.

We also believe that it was proper for the trial court to disallow the $24,101 in damages claimed for the time allegedly expended by Seidman and the laborers employed in his upholstery business. The plaintiffs introduced no evidence to support Seidman's testimony that the time claimed was actually expended. The credibility of witnesses is a question of fact for the trier of fact (*Robin v. Miller* (1978), 67 Ill. App. 3d 656, 384 N.E.2d 889), and the trial court had a right to disbelieve Seidman's testimony.

The plaintiffs' expert witness testified that the option provision of the mitigating lease was less favorable to the landlord than was the option provision of the breached lease and that therefore the plaintiffs were damaged in the amount of $62,693. However, this testimony constituted a comparison of the first option if exercised with the second option if exercised. We believe that it was proper for the trial court to disallow this item since the first option will not be exercised and there is no indication that the mitigating tenant will choose to exercise the option provision of the mitigating lease.

Another item of damages claimed concerns the fact that under the mitigating lease the landlord was not to receive rents until after the completion of remodeling. The plaintiffs used their own money for remodeling until the work was completed and they could begin collecting rents. They claimed that the theoretical cost of using their own money until rents could be collected was $12,154. However, it appears from the record that the trial court believed that the delay in the right to collect rents from the mitigating tenant was not a result of the defendants' breach but rather was occasioned by the fact that the plaintiffs, through their

own fault, took an unreasonable length of time, from November 1975 to May 1976, to complete the remodeling. Because this conclusion is supported by the record we believe the trial court could properly have disallowed this expense in computing damages.

The plaintiffs also seek to recover $1000 paid as accounting fees. Seidman testified that he employed accountants long before the mitigating tenancy. It appears from the record that this expense would have been incurred even had the defendants performed their obligations under the original lease. We therefore believe that the trial court acted properly in disallowing this expense.

Seidman testified in support of his claim for $2030 in legal fees. He testified that these expenses were incurred in order to obtain the tenancy. He was asked to specify what work had been done by the law firms in earning the fees. After repeated questioning, he explained the work involved concerning $1131 in fees. There is no testimony concerning $899 in fees, except that it was for "additional legal work." Because the record does not reflect that $899 in legal fees were a result of the defendants' breach, we believe the trial court could properly have disallowed the $899 expense.

The plaintiffs also claimed $3387 in damages for insurance expenses. Under the breached lease the defendants were to pay for property insurance against claims for personal injury or property damage. The plaintiffs were to pay for fire and casualty insurance except that the defendants would pay any increase in the cost of premiums which resulted from increased valuations of the premises. According to Seidman's own testimony, at least some of the $3387 was for rent insurance. It is clear that under the breached lease the defendants would not have been responsible for rent insurance. Accordingly it would be improper to impute the cost of rent insurance to the defendants. The record does not reveal what other types of insurance were purchased. Since the record supports the conclusion that none of the $3387 was expended for property insurance or for increases in fire and casualty insurance which resulted from increased valuations of the premises, we believe the entire $3387 was properly disallowed.

Under this analysis the trial court could properly have disallowed at least $129,805 of the damages claimed. We will therefore not disturb the award of damages as we do not believe it to be manifestly erroneous or the result of passion, prejudice or corruption.

The plaintiffs next contend that the trial court's award of attorneys' fees for the trial level proceedings was inadequate and contrary to the evidence. Time charts established that the plaintiffs' attorneys spent 254.6 hours at an average hourly rate of $65.57 or $16,694 for the trial level proceedings and 157.3 hours at an average hourly rate of $67.50 or $10,413

for the first appeal. They also introduced expert testimony that the reasonable value of the service performed, taking into account the delay in payment and contingent nature of their fee arrangement, was $70,000 to $80,000. Additionally, they sought $983.90 for costs and $815 for expert witness fees.

The defendants called Joseph Roddy as an expert on the issue of reasonable attorneys' fees. He reviewed the resumes of the plaintiffs' attorneys, the record of proceedings, the appellate briefs, and the appellate court opinion. According to Roddy an attorney with the qualifications reflected by the resumes could be reasonably expected to expend 47 to 60 hours on the trial level proceedings from start to finish. He testified that 65 to 90 hours would be reasonable for the appeal.

The trial court awarded $8,001.60 as attorneys' fees and costs, after considering the amount of time actually expended, the amount of time expended on the issue of fees in relation to the amount of time expended on other aspects of the case, the nature of the case, the effort involved, the expertise of the attorney, the attorney's knowledge of commercial leases, the attorney's ability and trial experience, and what the court felt were reasonable attorneys' fees. There is evidence in the record on each of the factors considered.

The plaintiffs allege that the standard for determining reasonableness of fees which is applicable here is that set forth in Rule 2—106(b) of the Illinois Code of Professional Responsibility. (79 Ill. 2d R. 771.) That Rule provides that the following factors be considered as guides in determining the reasonableness of a fee:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood that the acceptance of the particular employment would preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

We believe that under the standard alleged by the plaintiffs the court's award of attorneys' fees for the trial level proceedings was supported by the evidence. The first, second, fifth and sixth factors

appear to be more or less neutral in this case. Consideration of the amount involved and the results obtained, the fourth factor, weighs in favor of a small award. That the fee was contingent on the outcome, the eighth factor, weighs in favor of a larger award. There was conflicting expert testimony concerning the third factor, the fee customarily charged in the locality for similar legal services. Moreover, the trial court's award was in conformity with the expert testimony presented by the defendants. Roddy testified that from the moment the client walked in the door until the time the trial judge ruled at the conclusion of the evidence a total of 47 to 60 hours would be a reasonable amount of time to be expended. Multiplying the high hourly figure, 60 hours, by the average hourly rate claimed by the plaintiffs, $64.70, a figure of $3884.40 is reached for fees. When the costs, $983.90, and expert witness fees, $815, are added to this attorneys' fees figure, a total of $5683.30 is reached. Thus, the trial court's award of $8001.60 is greater than the minimum award which would have been supported by the evidence.

The plaintiffs' last contention is that the trial court erred in refusing to award attorneys' fees incurred in prosecuting the first appeal of this cause. The trial court determined that the attorneys' fees provision of the lease did not apply to the appellate proceedings.

■█ The attorneys' fees provision of the lease provides that the lessee pay all "reasonable costs, attorney's fees and expenses that may be incurred by Lessor, in enforcing the covenants and agreements of this lease." None of the cases cited by the parties concern the issue before us, whether under such a lease provision the lessor may recover attorneys' fees expended in successfully appealing a trial court ruling that the covenants and agreements of the lease are unenforceable.

We believe that the attorneys' fees provision of the lease requires the defendants to pay the reasonable costs, attorneys' fees and expenses incurred by the plaintiffs in the first appeal. Because the trial court erroneously held that the lease was not binding, the plaintiffs' appeal was necessary in order to enforce "the covenants and agreements of the lease." The appeal was successful and in fact resulted in the enforcement of the lease provisions.

For the foregoing reasons the judgment of the circuit court is affirmed except for that portion concerning attorneys' fees for the first appeal, and the cause is remanded to the trial court for the determination of reasonable fees, expenses and costs incurred in the first appeal.

Affirmed in part, reversed in part, and remanded.

JOHNSON and LINN, JJ., concur.