NORTHWEST COMMERCE BANK, Plaintiff-Appellee and Cross-Appellant, v. CONTINENTAL DATA FORMS, INC., Defendant-Appellant and Cross-Appellee (C J S Commercial Property Associates, Inc., Plaintiff-Appellee and Cross-Appellant).

Second District   No. 2—91—1211

Opinion filed August 18, 1992.

Jeffrey Lawrence, of Kelley & Associates, of Schaumburg, and Ronald O. Roeser, of Roeser, Vucha & Carbary, of Elgin, for appellant.

Howard B. Prossnitz, of Rochelle, for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiffs, Northwest Commerce Bank and C J S Commercial Property Associates, Inc. (the landlords), filed two claims against the defendant, Continental Data Forms, Inc. (the tenant). They sought rent, real estate taxes, insurance, common area maintenance ex-

penses, and damages on two leases breached by the tenant. After the claims were consolidated and tried, the court awarded the landlords $170,272.45, and the tenant appealed. The landlords brought a cross-appeal, arguing they were entitled to relief if this court ordered a new trial. We affirm the court's award, as modified.

This case arose after the tenant vacated commercial and industrial premises it had leased from the landlords. Although its leases ran through July 14, 1989, the tenant vacated the premises in October 1988.

In January 1991, the court granted the landlords partial summary judgment for base rent and real estate taxes of $44,411.25. Following a bench trial on the remaining issues, the court entered judgment for the landlords: $170,272.45; that amount was a total, including the summary judgment amount. The court denied the tenant's claim for rent setoff. The parties brought this appeal and cross-appeal.

The parties agree that the court's award comprised the following elements:

| | |
|---|---|
| Base rent and taxes | $ 44,411.25 |
| Insurance | 5,413.97 |
| Common area maintenance | 3,968.58 |
| Repairs | 108,897.03 |
| Interest | 7,581.62 |

The parties also agree that the court disallowed $89,195.65 of the landlords' claims. Those amounts were for brokerage and advertising costs to relet; the rent concession and construction allowance to the new tenant, Material Corporation; a repair allowance to Gold's Gym; and certain other repair amounts.

On appeal, the tenant first argues that although the landlords were entitled to have the property restored to them in a decent condition, the trial court erred in awarding damages for demolition and removal of interior walls and ceilings, and for the related replacement of sprinkler lines and electrical equipment. According to the tenant, these expenses were for capital improvements, and, thus, their award to the landlords was against the manifest weight of the evidence.

The landlords argue that these expenses were not capital improvements but were necessary repair because of the widespread interior damage left by the tenants. According to the landlords, these charges reflected the cheapest repair of the premises.

■ A vacating tenant has no duty to pay for capital improvements which add value to the property. (*Pioneer Trust & Savings Bank v. Zonta* (1981), 96 Ill. App. 3d 339, 346.) However, as the tenant acknowledges, if the condition of the premises is not the same at

the end of a tenancy as at the beginning, the landlord may hold the tenant liable for the costs to return the premises to a condition acceptable for rental. (*Pyramid Enterprises, Inc. v. Amadeo* (1973), 10 Ill. App. 3d 575, 579.) Also, the owner of damaged property has the discretion to decide how to fix it. *United States v. Peavey Barge Line* (C.D. Ill. 1984), 590 F. Supp. 319, 323.

■ On appeal, the trier of fact's determination of damages should not be disturbed unless it is contrary to the manifest weight of the evidence. (*Pioneer*, 96 Ill. App. 3d at 345.) Even when the appellate court would have been better satisfied with different findings as to damages, it will not interfere with the trial court's award, where the evidence is conflicting or where there is evidence in support of the verdict and there is no indication that the award was the result of passion, prejudice, or corruption. 96 Ill. App. 3d at 345.

■ We find no basis to disturb the court's award of damages for the demolition and removal of interior walls or the replacement of sprinkler lines and electrical equipment. The trial court considered evidence, including testimony of the landlords' president, Carl Swanson, that the landlords had chosen demolition and cleanup as being easier and less expensive than repairing the various types of damage left by the tenant.

Furthermore, we do not find, as the tenant argues, that Swanson's testimony in that regard was unsupported by the other evidence. The tenant contrasts the court's approximate $39,000 demolition award with the landlords' $19,920 estimate for repair of the wall and ceiling damage caused by the tenant. However, in response to questioning about any anticipated additional repair expenses, Swanson referred to an additional $1,200 for painting and staining new doors and frames. Swanson further opined, based on his experience with the contractor who had offered the $19,920 estimate, that the actual repair bill probably would have been $25,000 higher.

Considering all the record evidence, we do not find any reason to disturb the court's apparent conclusion that the landlords' demolition and rebuilding was the least expensive means for the landlords to return their property to a condition acceptable for rental. (See *Pyramid*, 10 Ill. App. 3d at 579.) There is no basis for us to conclude that it was against the manifest weight of the evidence or that it was the result of passion, prejudice, or corruption. *Pioneer*, 96 Ill. App. 3d at 345-46.

The tenant's second argument challenges whether another portion of the court's damage award was against the manifest weight of the evidence. In that argument, the tenant charges that the court erred in

awarding damages for "wear and tear" repairs. The tenant correctly notes that the leases at issue exempted it from a duty to repair damage caused by ordinary wear and tear. It argues that $19,621.56 of the court's damage award improperly covered ordinary wear and tear. That amount was for removal and replacement of seven service doors, frames, and hardware; for repair and replacement of overhead garage doors; and for heating and air conditioning repairs. We will address each of those subarguments in turn.

■ Regarding the landlords' claim of service door and related replacements, president Swanson testified that the doors were delaminated and "coming apart." The landlords' contractor, Rick Korporwicz, also testified that the doors had hinges missing and that they were bent and delaminated. According to Korporwicz, the doors were made of metal, and after the tenant vacated the premises, their condition caused them not to close properly. Based on this evidence, we find no abuse of discretion in the trial court's apparent conclusion that this damage was not the result of ordinary wear and tear. *Pioneer*, 96 Ill. App. 3d at 345-46.

Regarding the award of the cost to replace damaged garage doors, Korporwicz testified that the landlords had replaced only doors that could not be repaired; reparable doors were, instead, repaired. Korporwicz also testified that the doors that he replaced had had holes punched in them. President Swanson testified that the holes in the doors at issue were variously sized and punched from the inside to the outside; he opined that forklift trucks had punched them. The tenant's former maintenance foreman, Max Metz, testified that the fiber in the overhead doors had been disintegrating and that he had repeatedly patched them.

In analyzing this portion of the award, the tenant asserts, without explanation, that foreman Metz's testimony "is obviously entitled to greater weight." Despite the absence of direct testimony on how the holes were created in the overhead garage doors, we find the full record supports the trial court's conclusion that the damage was not the result of normal wear and tear. (See *Pioneer*, 96 Ill. App. 3d 345-46.) We note that the tenant has offered no authority for his suggestion that a forklift's punching holes into doors should be classified as ordinary wear and tear rather than damage that should be avoided by the exercise of ordinary and reasonable care.

■ The final item in this argument addresses repairs to heating and air conditioning equipment. In that portion of its argument, the tenant examines the relevant lease clauses and claims that under that language it was not responsible to maintain the equipment at issue be-

cause the equipment was located on top of the building rather than inside the building. The landlords claim that the tenant has waived the argument because it never was raised in the trial court.

The tenant correctly notes that damages related to the heating and air conditioning equipment were generally at issue in the trial court. However, it does not refer us to nor do we find any trial record reference to the particular argument now presented, one based on the equipment's physical location. We agree with the landlords that the issue has been waived as it was not raised in the trial court. See *In re Estate of Halas* (1991), 209 Ill. App. 3d 333, 350.

The tenant's next argument on appeal is that the court erred in awarding interest. The parties apparently agree that the court awarded the landlords 10% per annum interest, pursuant to the landlords' calculation that $7,581.62 interest was due on rent, taxes, insurance, and common area maintenance amounts owed by the tenant. The tenant argues merely that the landlords did not supply a reasonable basis for computing interest. The landlords rely on the parties' stipulation to the admission of the landlords' exhibit 1C and on the lease provision that allows recovery of prime rate interest on unpaid lease expenses.

Exhibit 1C is entitled "Amounts Sought by Plaintiffs." It itemizes damage requests and includes an entry "Interest on Unpaid Lease Expenses *** ($37,908.08 x 10% x 2 years) $7,581.62." The landlords claim that exhibit 1C used 10% as the average of the Citibank prime interest rate from 1989 to 1991. They also note that the tenant did not object to admission of exhibit 1C or to its reference to the 10% figure, nor did the tenant present evidence that the 10% interest amount was unreasonable or question witnesses regarding the rate. The tenant replies that the record includes no evidence that 10% was the average Citibank prime rate between 1989 and 1991.

■ Both parties cite only to *Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668. That case cites the well-established rule that, in an action for damages for breach of contract, the parties seeking to recover must supply a reasonable basis for damage computation. (42 Ill. App. 3d at 677.) In *Brewer*, the court found that the plaintiffs had failed to produce proper evidence to allow reasonable computation of their damages for the defendant's defective workmanship on a soffit.

Although the facts in this case are somewhat different than those in *Brewer*, we note that the burden of proof of damages is on the plaintiff, not on the defendant. (*First National Bank v. Dusold* (1989), 180 Ill. App. 3d 714, 718.) Furthermore, we note that the

plaintiff must prove damages to a reasonable degree of certainty and evidence cannot be remote, speculative, or uncertain. *In re Estate of Halas* (1991), 209 Ill. App. 3d 333, 349.

■ In this case, we find no evidentiary basis upon which the court could have based its interest award. (See *First National Bank*, 180 Ill. App. 3d at 720.) The only record basis we find for an interest award is exhibit 1C's fully unverified interest reference. The tenant's stipulation to admission of that exhibit is no more a stipulation to its liability on a 10% interest rate than it is a stipulation to its liability on the other damages claimed therein. Furthermore, the tenant's failure to present evidence contrary to the 10% reference is of no consequence, where the landlords presented no evidence proving the relevant prime interest rate to a reasonable degree of certainty. (180 Ill. App. 3d at 720.) Because it lacks record support, we vacate the court's interest award.

■ The tenant's fourth argument is that the court erred in rejecting its claim for rent setoff. At trial, the tenant claimed a rent setoff based upon the base rent chargeable to the successor tenant, Material Corporation, during the 2½ months that were covered both by the new Material Corporation lease and the tenant's unexpired lease. The landlords objected to the setoff, relying on the fact that they had forgiven Material Corporation its first four months of rent, so that no rent was due, collected, or available for an offset.

In its appellate argument, the tenant relies on non-Illinois law, urging the reasonableness of the Maryland approach to a similar situation in *Millison v. Clarke* (1980), 287 Md. 420, 413 A.2d 198. The parties agree that in *Millison* the landlord granted its new tenant a rent holiday at the beginning of the lease and that the court held that whether the old tenant was entitled to a credit for rent amounts that could have collected from the new tenant depended upon a factual determination of whether the rent concession was necessary in order to persuade the new tenant to sign the lease.

Like the landlords, we analyze this issue by assuming for the sake of argument that we should follow the *Millison* approach urged by the tenant. Even given that assumption, we find no basis to disturb the trial court's determination here. The record includes testimony from both the president of Material Corporation and from president Swanson that because of the condition of the property, Material Corporation would not have leased it without the rent holiday. The record was sufficient for the trial court to conclude that the four-month rent concession was necessary to persuade Material Corporation to sign

the new lease. Consequently, we find no basis to reverse the trial court's denial of a setoff.

■ The tenant's final argument is more generally that the court's judgment for damages other than base rent and real estate taxes is not supported by the evidence. In this portion of its argument, the tenant relies on the court order's lack of specificity as to the elements of damage awarded. We find no merit to this claim.

As we noted earlier, even when the appellate court would have been better satisfied with different findings, we generally will not interfere with a trial court award supported by the evidence. (*Pioneer Trust & Savings Bank v. Zonta* (1981), 96 Ill. App. 3d 339, 345.) As the landlords note, although it did not specify the amounts related to each relevant portion of the award, the court's opinion did enumerate the categories of damages awarded or denied. Furthermore, Illinois Supreme Court Rule 366 makes clear that specific findings are not required. 134 Ill. 2d R. 366(b)(3)(i).

We note that the record in this case includes a full report of proceedings. (*Cf.* Ill. Ann. Stat., ch. 110A, par. 366, Historical & Practice Notes, at 45 (Smith-Hurd 1985).) We also find that the tenant misplaces reliance on *Muck v. Van Bibber* (1992), 223 Ill. App. 3d 830. In *Muck*, the appellate court vacated the trial court's dismissal of the complaint and ordered the trial court to specify which of the defendant's 10 argued bases for dismissal underlay its decision to dismiss. In this case, unlike in *Muck*, our review of the trial court's decision is in no way hampered by lack of specificity in the trial court's order.

Under the powers of Supreme Court Rule 366(a)(1) (134 Ill. 2d R. 366(a)(1)), we modify the court's judgment to eliminate the award for $7,651.63 interest. We then affirm the judgment of the trial court, as modified. In so doing, we note that the landlords limit their cross-appeal to a request that, if a new trial is ordered, they be allowed to seek the amounts originally disallowed by the trial court. We deny any cross-appeal.

Based on the foregoing, we affirm the judgment of the circuit court of Kane County, as modified.

Affirmed as modified.

WOODWARD and NICKELS, JJ., concur.